IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Tyrone Alexander Crowder, | ) | Civil Action No 8:15-cv-00533-BHH-JDA |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Carolyn W. Colvin, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local Civil Rule 73.02(B)(2)(a), D.S.C., and 28 U.S.C. § 636(b)(1)(B).[1] Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for disability insurance benefits ("DIB"). For the reasons set forth below, it is recommended that the decision of the Commissioner be reversed and remanded for administrative action pursuant to sentence four of 42 U.S.C. § 405(g).

## PROCEDURAL HISTORY

On December 29, 2011, Plaintiff filed an application for DIB, alleging an onset of disability date of December 22, 2011. [R. 125–28.] The claim was denied initially and on reconsideration by the Social Security Administration ("the Administration"). [R. 90–93, 98–99.] Plaintiff requested a hearing before an administrative law judge ("ALJ"), and on

---

[1] A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

August 12, 2013, ALJ Peggy McFadden-Elmore conducted a de novo hearing on Plaintiff's claim. [R. 25–48.]

The ALJ issued a decision on September 27, 2013, finding Plaintiff not disabled. [R. 11–20.] At Step 1,[2] the ALJ found Plaintiff met the insured status requirements of the Social Security Act ("the Act") through December 31, 2016, and had not engaged in substantial gainful activity since December 22, 2011. [R. 13, Findings 1 & 2.] At Step 2, the ALJ found Plaintiff had the following severe impairments: obesity; obstructive sleep apnea; osteoarthritis; and hypertension. [R. 13, Finding 3.] The ALJ also found Plaintiff had the following non-severe impairments: thyromegaly; anemia/sickle cell trait; headaches; hyperlipidemia; and heart murmur. [*Id*.] At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 14, Finding 4.]

Before addressing Step 4, Plaintiff's ability to perform his past relevant work, the ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except for the following limitations: lifting and / or carrying limited to 50 pounds occasionally and 25 pounds frequently; standing and / or walking at least two hours in an eight-hour workday; sitting about six hours in an eight-hour workday; no more than occasional climbing of ladders, ropes, or scaffolds; no more than frequent climbing of ramps or stairs; no more than frequent balancing, stooping, kneeling, crouching, or crawling;

---

[2]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

and avoidance of even moderate exposure to hazards such as
dangerous machinery and unprotected heights.

[R. 14, Finding 5.]  Based on this RFC finding, the ALJ determined at Step 4 that Plaintiff

could perform his past relevant work as a delivery route sales driver and industrial cleaner.

[R. 18, Finding 6].  The ALJ also made alternative findings with respect to other jobs

Plaintiff could perform in the national economy in light of his age, education, and RFC.  [R.

19–20.]  On this basis, the ALJ found Plaintiff had not been under a disability as defined

by the Act from December 22, 2011, through the date of the decision.  [R. 20, Finding 7.]

Plaintiff requested Appeals Council review of the ALJ's decision, but the Council

declined.  [R. 1–3. ]  Plaintiff filed this action for judicial review on February 4, 2015.  [Doc.

1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's RFC analysis is not based on substantial evidence for

the following reasons: the ALJ failed to address specific functions fairly at issue; the ALJ's

analysis failed to explain how all impairments, both severe and non-severe, were

accounted for in the RFC; and the ALJ failed to point to evidence showing Plaintiff could

sustain exertion on a regular and continuing basis to be gainfully employed at the medium

level.  [Doc. 17 at 7–10.]  Plaintiff also challenges the ALJ's credibility findings arguing that

the ALJ failed to properly take into account Plaintiff's inability to afford more sophisticated

treatment. [*Id*. at 11.]  Lastly, Plaintiff contends the ALJ did not properly evaluate and weigh

the opinion of Dr. Yongxin Li ("Dr. Li"), Plaintiff's treating internist, in accordance with 20

CFR § 404.1527 by failing to explain his consideration of the factors outlined therein. [*Id*.

at 12.]

3

The Commissioner, on the other hand, contends substantial evidence supports the ALJ's decision.  The Commissioner argues the ALJ properly explained why Plaintiff could perform a range of medium work and Plaintiff's conclusory allegations and rhetorical questions to the contrary are insufficient to show reversible error.  [Doc. 18 at 6–10.]  The Commissioner also contends the ALJ properly evaluated Plaintiff's subjective complaints finding them not fully credible.  [*Id*. at 10–13.]  Lastly, the Commissioner argues the ALJ properly gave no evidentiary weight to Dr. Li's opinion.  [*Id*. at 13–16.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963))("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the

4

[Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court

enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[3] With remand under sentence

---

[3]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992). Further, the Supreme

six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the

---

Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. § 404.1520. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 404.1572(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574–.1575.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* § 404.1521. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B).

### C.    *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d).

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[4] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. § 404.1560(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); 20 C.F.R. § 404.1520(f)–(g).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[5]  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *see also Gory v. Schweiker*, 712 F.2d 929,

---

[4]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. § 404.1545(a).

[5]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs.  20 C.F.R. § 404.1569a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  § 404.1569a(c)(1).

930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).  When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe

into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III.     Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 404.1527(c).  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(c)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways.  *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).  Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  20 C.F.R. § 404.1527(d).  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. § 404.1517.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

14

## V.     Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain."  *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs."  *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  Indeed, the Fourth Circuit has

15

rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).  The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence.  If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability.  Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered.  Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990).  SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p.  *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996).  SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the

adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor. But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Treating Physician's Opinion**

Plaintiff contends the ALJ did not properly evaluate and weigh the opinion of Dr. Li, Plaintiff's treating internist, in accordance with 20 CFR § 404.1527 by failing to explain his consideration of the factors outlined therein. Plaintiff asserts that the ALJ dismissed Dr. Li's opinion "out of hand on the sole basis that she felt that Mr. Crowder was overstating

his symptoms." [Doc. 17 at 13.]  The Commissioner argues the ALJ properly gave no

evidentiary weight to Dr. Li's opinion.  The Court is constrained to agree with Plaintiff.

### Dr. Li's Treatment Notes and Medical Opinion

According to the record evidence, Plaintiff saw Dr. Li on July 13, 2011, for a primary

care follow up with a history of hypertension, hyperlipidemia, Vitamin D deficiency, Sickle

Cell Trait/Anemia, Hypokalemia, Hypomagnesemia, chronic joint pain, sleep apnea

(CPAP), Obesity Class II, and medical non-compliance (not taking his blood pressure

medication for over a month).  [R. 256.] Plaintiff's last office visit was in March of 2011.

[*Id*.]  Plaintiff's physical examination produced relatively normal results.  [*Id*.]  Dr. Li noted

that Plaintiff's hypertension had not met the target range again and that Plaintiff had run

out of his medications.  [*Id*.] Plaintiff took his meds in the clinic and was advised of the

consequences if he continued to fail to take his medications.  [*Id*.]

Plaintiff's hyperlipidemia was mildly elevated and his Vitamin D level was improving.

[R. 257.]  Plaintiff's Sickle Cell Trait/Anemia, Hypokalemia, and Hypomagnesemia were

stable as well.  [*Id*.]  Plaintiff was put on narcotic pain medication to treat his chronic joint

pain because he was getting no improvement on Tylenol or was not suitable for/tolerating

NSAID treatment.  [*Id*.]  Plaintiff's CPAP machine was noted to be broken, and his

insurance would not pay for a new one.  [*Id*.] Plaintiff was advised to lose weight by eating

smaller portions and doing more physical exercise.  [*Id*.]  With respect to medical non-

compliance, Plaintiff was advised to make sure to keep his office visits and to take his

medications according to instructions.  [*Id*.]

Plaintiff saw Dr. Li again on follow up on July 27, 2011. [R. 262.] Notes indicated Plaintiff could not tolerate many blood pressure medications due to allergies. [*Id*.] Plaintiff's physical exam showed relatively normal findings and his hypertension was noted as "improved/stable since last visit" but still not at the target range. [*Id*.]  Plaintiff's shortness of breath ("SOB") was also noted as improved and stable, but Plaintiff was advised to come back to clinic or go to the ER if symptoms occur again or get worse.  [R. 263.] Plaintiff's hyperlipidemia was noted as controlled and stable on current treatment with diet and exercise.  [*Id*.] Plaintiff's Sickle Cell Trait/Anemia, Hypokalemia, and Hypomagnesemia were all stable.  [*Id*.]

Again on July 27, 2011, Plaintiff was put on narcotic pain medication to treat his chronic joint pain because he was getting no improvement on Tylenol or was not suitable for/tolerating NSAID treatment.  [*Id*.]  Plaintiff's CPAP machine was noted to be broken, and his insurance would not pay for a new one.  [*Id*.] Plaintiff again was advised to lose weight. [*Id*.]  With respect to medical non-compliance, Plaintiff was advised to make sure to keep his office visits and take his medications according to instructions.  [*Id*.]  Dr. Li also referred Plaintiff to Dr. Charles White for a pulmonology consult due to dyspnea / sleep apnea [R. 261] and to Dr. Mitchel Jacocks for his Dyspnea.  [R. 259].

On October 26, 2011, Plaintiff presented to Dr. Li. [R. 250.]  Plaintiff's physical exam findings were relatively normal with no edema noted in the lower extremities and normal neurologic findings.  [R. 250–51.]  Plaintiff's hypertension was meeting/close to target range and he was tolerating medications well; Plaintiff's hypercholesterolemia, however, was mildly elevated.  [R. 251.] It was noted that Plaintiff was not taking his blood pressure

medications. [*Id.*] Plaintiff's sleep apnea was noted to be stable, and Plaintiff was advised to try to lose weight. [*Id.*]

On January 25, 2012, Plaintiff saw Dr. Li. [R. 247.] On physical exam, Plaintiff generally had normal findings with no edema in the lower extremities. [R. 248.] Plaintiff's hypertension was meeting/close to target range, but his hypercholesterolemia was mildly elevated. [*Id.*] Plaintiff continued with narcotic medications for his joint pain, and his sleep apnea was noted to be stable. [*Id.*]

On February 28, 2012, Plaintiff returned to Dr. Li. [R. 244.] Again, Plaintiff's physical exam resulted in generally normal findings with no edema noted in the lower extremities. [R. 245.] Plaintiff's hypertension was noted to be stable compared to previous BP but still not meeting/close to target range. [*Id.*] Plaintiff continued his narcotic pain medications for joint pain, and his back and neck pain were noted to be under control with pain medication. [*Id.*] Plaintiff's hypercholesterolemia was noted to be mildly elevated, and his sleep apnea was noted to be stable. [*Id.*] Plaintiff was advised to lose weight. [*Id.*]

On May 29, 2012, Plaintiff saw Dr. Li and, on physical exam, presented generally normal findings with swelling described as "boggy" in this right and left lower extremities. [R. 240–41.] Treatment notes indicated Plaintiff was not meeting/close to his target blood pressure range, and he apparently had not been taking his medication as instructed. [R. 241.] Plaintiff's cholesterol was elevated. [R. 242.] Plaintiff reported pain in his knee/wrist/shoulder and was advised to follow up with a rheumatologist. [*Id.*] Notes indicated Plaintiff continued to decline GI endoscopic work up for chronic anemia to detect GI cancer or other disorders. [R. 243.] Notes also indicated Plaintiff failed to bring his

home medications for review.  [*Id*.] Plaintiff was advised to reduce salt / fluid intake and to wear compression stockings during the day and elevate legs more frequently. [*Id*.]

Dr. Li's treatment notes from November 29, 2012, indicated that Plaintiff "missed previous appointments and has not been here for regular office visits since 5/29/2012. Again, the patient runs out of medication."  [R. 285.]  On neurologic, mental and physical exam, Plaintiff's results were generally normal. [R. 286.] Plaintiff's hypertension was noted as not meeting/close to target range. [*Id*.] Plaintiff indicated he ran out of medication and could not afford Diovan; a prescription for Losartan was given and a sample of Diovan was provided.  [*Id*.]  Plaintiff's cholesterol was mildly elevated, and his chronic anemia was noted as stable.  [*Id*.]  Plaintiff had edema in both legs and was advised to reduce salt/fluid intake and to wear compression stockings during the day and to elevate his legs more frequently.  [*Id*.] Plaintiff's back pain was described as under control with pain medication; his neck pain was described as chronic, stable, and under control with pain medication as needed. [*Id*.] Treatment notes also indicated Plaintiff filed for disability and had no medical insurance.  [R. 286–87.]  Plaintiff was advised to go to Sumter Family Health Center ("SFHC") to get medical care because he was not able to afford to continue coming to Dr. Li's clinic and fill his prescriptions.  [*Id*.]  Again, Plaintiff failed to bring his home medications for review.  [*Id*.]

On January 31, 2013, Plaintiff returned to Dr. Li.  [R. 282.]  Treatment notes indicated again that Plaintiff had no medical insurance and was not taking his blood pressure medication.  [*Id*.]  On physical, mental and neurologic exam, Plaintiff's findings were generally normal.  [R. 283.]  Plaintiff's hypertension was noted as not meeting/close

to the target range; Plaintiff runs out of medication. [*Id*.] Treatment notes indicated that, on medication treatment, Plaintiff was stable and tolerated treatment. [*Id*.] Plaintiff's cholesterol was mildly elevated; back pain was chronic but stable; and sleep apnea was stable under current treatment with CPAP. [*Id*.] Plaintiff was advised to follow up with a rheumatologist for his wrist/shoulder pain and to take Tylenol for pain control. [*Id*.] Plaintiff remembered to bring in his medications for review. [R. 284.]

On February 18, 2013, Plaintiff presented to Dr. J. Harrell Docherty, Jr. ("Dr. Docherty"), who is in the same practice with Dr. Li, for a recheck of polyarthritis, back and neck pain, and swelling and burning in feet. [R. 279.] Dr. Docherty noted Plaintiff had no medical insurance, and he was not taking his blood pressure medication. [*Id*.] Plaintiff's findings on physical exam were generally normal with the exception of a stiff gait. [R. 280.] On musculoskeletal exam, Plaintiff showed mild tenderness in the upper trapezius area, right and left; moderate medial low back pain; moderate tenderness in the right buttocks; and normal lumbosacral spine movements. [*Id*.]

On March 21, 2012, Dr. Li completed a Medical Release/Physician's Statement on Plaintiff's behalf on South Carolina Department of Social Services ("DSS") form 1247. [R. 293–94.] Dr. Li indicated as follows in response to the form questions:

- Plaintiff's disability is permanent.
- Plaintiff is unable to work or participate in activities to prepare for work.
- Plaintiff can sit for a maximum of 2 hours per day.
- Plaintiff can stand for a maximum of 5 minutes.
- Plaintiff can walk for a maximum of 2 minutes.
- Plaintiff cannot climb stairs/ladders, kneel/squat, bend/stoop, push/pull or lift/carry.
- Plaintiff can keyboard for a maximum of 2 hours per day.
- Plaintiff may not lift/carry object more than 30 pounds for more than 15 minutes per day.

22

[R. 293.] Dr. Li noted Plaintiff's primary disabling diagnosis was general osteoarthritis and his secondary disabling diagnosis was severe hypertension. [R. 294.]

### *Other Medical Evidence of Record*

On January 22, 2011, Plaintiff was transported by EMS and hospitalized at Tuomey Hospital for back pain and high blood pressure. [R. 205.] Plaintiff had failed to take his blood pressure medication, and there was some concern that he had right facial droop and possibly a CVA. [*Id.*] Plaintiff's blood pressure improved after treatment, and there was no sign of a stroke. [R. 206.] Plaintiff was diagnosed with musculoskeletal lumbosacral strain and uncontrolled hypertension due to poor medical compliance. [R. 207.] Plaintiff was discharged the same day. [R. 209.]

On December 12, 2011, Plaintiff saw pulmonary specialist Dr. Charles H. White, Jr. ("Dr. White") for his sleep apnea. [R. 222.] Dr. White reported good compliance with treatment and good tolerance of treatment and fair symptom control. [*Id.*] Dr. White also noted that Plaintiff's symptoms were exacerbated by fatigue, not by weight. [*Id.*] Physical exam showed generally normal findings. [R. 223.] Musculoskeletal, cardiovascular, and neurologic exams had normal findings. [R. 224.]

A Comprehensive History and Disability Physical Examination was conducted by Dr. Eric Byrd ("Dr. Byrd") of Tuomey Industrial Medicine and Wellness on April 9, 2012. [R. 233–35.] On musculoskeletal exam, Dr. Byrd noted that Plaintiff had some limited range of motion in his spine. [R. 234.] Plaintiff showed a full range of motion about both shoulders with no complaints of pain, and full range of motion about the elbows with no complaints of pain. [*Id.*] Plaintiff had 5/5 strength bilaterally in his biceps/triceps and had

23

good grip bilaterally. [*Id*.] Plaintiff was able to bend at the waist very slowly to about 90 degrees, but complained of pain in his lower back. [*Id.*] Any rotation or lateral flexion about the lower back appeared uncomfortable for Plaintiff, and Plaintiff experienced pain in both hips when he flexed at about 80 degrees. [*Id.*] Plaintiff's joints were stable, but he had audible crepitance bilaterally. [*Id.*] Plaintiff's lower legs and ankles showed 2+ pitting edema bilaterally and his feet were quite swollen; he also had numerous hyperpigmented splotches over his lower legs. [*Id.*]

Dr. Byrd diagnosed Plaintiff with hypertension (his blood pressure was quite elevated and Plaintiff had not taken his medication); obstructive sleep apnea (symptomatic even though compliant in using his CPAP); polyarthralgias involving the neck, lower back, hips, knees, feet and ankles (most likely degenerative in nature); and thyromegaly. [*Id.*] Plaintiff's medications included Nifedipine, Hadralazine, Flexeril, Spironolactone, Diovan, and a Proventil inhaler. [*Id.*] Dr. Byrd noted that Plaintiff gave good effort on exam but had difficulty standing for any length of time due to swelling in his feet. [R. 235.]

On December 12, 2011, Plaintiff saw Dr. White for a recheck of his sleep disorder. [R. 218.] Dr. White noted reported good compliance with treatment and good tolerance of treatment and fair symptom control. [*Id.*] Plaintiff's initial diagnosis of sleep apnea was eleven years prior. [*Id.*] Dr. White noted on musculoskeletal exam that Plaintiff had normal gait, no deformities; neurologic exam was normal; and cardiovascular exam was normal. [R. 220.] Dr. White noted that Plaintiff was still symptomatic due to his sleep apnea and increased his CPAP pressure. [R. 221.]

Treatment notes from July 3, 2013, indicated Plaintiff was seen by physician assistant Blaine Varner at the SFHC on follow up after an ER visit two days prior for uncontrolled hypertension. [R. 297; *see also* R. 301–09(ER notes).] Plaintiff was out of Nifedipine, Diovan, Hydralazine, and Spironolactone. [*Id.*] Plaintiff had, apparently, dropped off the prescriptions from Dr. Li's office at SFHC, but because he had not been seen there, the prescriptions could not be honored. [*Id.*] Plaintiff was diagnosed with neuropathy lower extremity, unchanged; hypertension-benign essential, uncontrolled; and osteoarthrosis, generalized involving multiple sites. [*Id.*]

### ALJ's Weighing of Dr. Li's Opinion

The ALJ cited to Dr. Li's treatment notes from July 2, 2011 to May 29, 2012, noting that the records showed Plaintiff experienced obesity, obstructive sleep apnea, back pain, and joint pain, with continued medicinal management of hypertension, despite some repeated non-compliance. [R. 15.] The ALJ also noted additional treatment records from Dr. Li and Dr. Docherty through February 18, 2013, showed no change in Plaintiff's condition calling for only conservative treatment and care; and, Dr. Docherty confirmed diagnoses for osteoarthritis, mechanical back pain, and neuropathic limb pain. [*Id.*] In weighing Dr. Li's opinion, the ALJ explained as follows:

> As for the opinion evidence, on March 21, 2012, Dr. Li issued a medical source statement and indicated that the claimant is limited to less than sedentary exertion, including sitting limited to two hours in an eight-hour day and standing/walking limited to mere minutes (Exhibit 11F). The medical evidence of record, including Dr. Li's own treatment notes, fails to support this medical source statement. Moreover, the record shows that the claimant's condition is often unnecessarily exacerbated due to the claimant's own medicinal

> non-compliance. Therefore, I find that this medical source statement is entitled to no evidentiary weight.

[R. 17.]

### *Discussion*

In considering medical source opinions, such as treating physicians, the ALJ is obligated to evaluate and weigh these medical opinions "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). Courts typically "accord 'greater weight to the testimony of a treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Id.* (*quoting Mastro*, 270 F.3d at 178). While the ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, *Craig*, 76 F.3d at 590, the ALJ must still weigh the medical opinion based on the factors listed in 20 C.F.R. § 404.1527(c).

The opinion of a treating physician is given controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). Additionally, Social Security Ruling ("SSR") 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion:

> [A] finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the

26

> opinion is not entitled to "controlling weight," not that the
> opinion should be rejected. Treating source medical opinions
> are still entitled to deference and must be weighed using all of
> the factors provided in 20 C.F.R. 404.1527 and 416.927. In
> many cases, a treating source's opinion will be entitled to the
> greatest weight and should be adopted, even if it does not
> meet the test for controlling weight.

1996 WL 374188, at *4 (July 2, 1996).

This Court focuses its review on whether the ALJ's opinion is supported by substantial evidence, because its role is not to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Craig*, 76 F.3d at 589. Typically, the Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 404.1527(c)(2). However, as previously stated, "the rule does not require that the testimony be given controlling weight." *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir.1992).

If a treating physician's opinion does not merit controlling weight, the ALJ is to evaluate it using the factors outlined in 20 C.F.R. § 404.1527(c); *see* SSR 96–2p; *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006). However, the Fourth Circuit has not mandated an express discussion of each factor and courts in this district have held that "an express discussion of each factor is not required as long as the ALJ demonstrates that he applied the . . . factors and provides good reasons for his decision." *See Hendrix v. Astrue*, C/A No. 1:09–1283-HFF, 2010 WL 3448624, at *3 (D.S.C. Sept. 1, 2010); see also § 404.1527(c)(2) (requiring ALJ to give "good reasons" for weight given to treating source's opinion). Consequently, a district court will not disturb an ALJ's determination as to the weight to be assigned to a medical opinion, including the opinion of a treating physician,

"absent some indication that the ALJ has dredged up 'specious inconsistencies' . . . or has not given good reason for the weight afforded a particular opinion." *Craft v. Apfel*, No. 97-2551, 1998 WL 702296, at *2 (4th Cir.1998) (citation omitted).

As an initial matter, the Court notes the ALJ's decision to give the opinion of Plaintiff's treating physician "no weight" appears to contradict the agency's expressly stated approach to weighing the opinions of treating physicians as provided in SSR 96-2p. *See supra* pp.26–27 (e.g., if not given controlling weight, still entitled to deference and possibly great weight). However, courts have found that "an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. § 416.927(d), if he sufficiently explains his rationale and if the record supports his findings." *Wireman v. Barnhart*, C/A No. 2:05CV00046, 2006 WL 2565245, at *8 (W.D.Va. 2006); *see also Bishop v. Comm'r of Soc. Sec.*, 583 F. App'x 65, 67 (4th Cir. 2014) (affirming ALJ's decision to afford no weight to the treating physician's opinion); *Dellinger v. Colvin*, C/A No. 6:14–1150–DCN, 2015 WL 5037942, at *8–9 (D.S.C. Aug. 26, 2015) (affirming ALJ's decision to afford no weight to the treating physician's opinion where the ALJ gave specific reasons for the weight given to the treating source's medical opinion, reasons that were supported by the evidence in the case record).

In the instant case, however, the Court is unable to find that the reasons provided by the ALJ in giving "no weight" to Dr. Li's opinion are supported by substantial evidence. The ALJ's decision left significant ambiguity as to the evidence the ALJ relied upon in completely disregarding the opinion. The ALJ's decision stated, in a conclusory manner, that medical evidence of record including Dr. Li's own treatment notes failed to support Dr.

Li's medical source statement.  But, the ALJ failed to point to any evidence of record, including Dr. Li's treatment notes, which contradicted Dr. Li's opinion.  And, the ALJ's statement that Plaintiff's impairments could be easily controlled with appropriate medicinal compliance is not sufficiently explained with reference to the evidence of record.

To the contrary, Dr. Li's treatment notes indicated that Plaintiff had edema of both legs and was advised to reduce salt/fluid intake and wear compression stockings during the day time and elevate legs more frequently. [R. 243, 286.]  And, the treatment notes indicated Plaintiff was put on narcotic pain medication to treat his chronic joint pain. [R. 247, 257, 262, 286.]  Also, Dr. Li's treatment notes indicated that oftentimes Plaintiff's hypertension was not at the target rate.  The ALJ did not explain his consideration of all of this evidence, and it may support Dr. Li's treating physician opinion.  Moreover, there is evidence of record from Dr. Byrd, which may support Dr. Li's findings, noting that Plaintiff had "difficulty standing any length of time due to swelling in his feet." [R. 235.]  The ALJ did not explain his consideration of Dr. Byrd's findings in light of Dr. Li's opined limitations even in light of the ALJ's decision to give Dr. Byrd's consultative exam significant evidentiary weight.  Additionally, Physician Assistant Blaine Varner noted that Plaintiff had neuropathy in his lower extremity and osteoarthrosis generalized involving multiple sites, [R. 297], and the ALJ did not explain his consideration of this evidence.

The Court acknowledges that if a treating physician's conclusory opinion was based solely upon Plaintiff's subjective complaints of pain, and the ALJ found Plaintiff's testimony to be incredible, the ALJ could properly reject the treating physician opinion.  *See Craig*, 76 F.3d at 590.  However, this was not the case here.  While the ALJ did reject Plaintiff's testimony as unpersuasive and incredible, there is no indication that Dr. Li's opinion was

based solely upon Plaintiff's subjective reports of pain. As discussed above, Dr. Li's treatment notes and evidence from Dr. Byrd and Blaine Varner may have supported Dr. Li's opinion, and at least the ALJ should have adequately discussed it.

Based on the above, the Court finds the ALJ failed to sufficiently explain his rationale for his outright dismissal of Dr. Li's treating physician opinion. The ALJ did not sufficiently discuss the treating physician opinion factors and provide good reasons to give Dr. Li's opinion no weight. Accordingly, the Court is constrained to find that the ALJ's weighing of Dr. Li's opinion is not supported by substantial evidence.

**Remaining Allegations of Error**

Because the Court finds that the ALJ's failure to sufficiently explain his decision to give no weight to Dr. Li's treating physician opinion is an adequate basis for remand of this decision, the Court declines to address Plaintiff's additional allegations of error by the ALJ. On remand, however, the ALJ should take into consideration Plaintiff's remaining arguments.

<u>**CONCLUSION AND RECOMMENDATION**</u>

Based upon the foregoing, it is recommended that the decision of the Commissioner be REVERSED and REMANDED for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO RECOMMENDED.

May 18, 2016                                   s/Jacquelyn D. Austin
Greenville, South Carolina           United States Magistrate Judge